UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| PRESTON A. SMITH, | DECISION |
| | and |
| Plaintiff, | ORDER |
| v. | ---------------------------- |
| | REPORT |
| JAMES CONWAY, Superintendent, | and |
| PAUL CHIAPPIUS, JR., Dept. Sup of Security, | RECOMMENDATION |
| JAMES WHITFORD, S. DOLCE, | |
| KENNETH S. PERLMAN, and R. KILLINGER, | 10-CV-00824A(F) |
| | |
| Defendants. | |

_____

APPEARANCES:        PRESTON A. SMITH, *Pro Se*
                    87-C-0186
                    Downstate Correctional Facility
                    Box F
                    Fishkill, New York  12524

                    ERIC T. SCHNEIDERMAN
                    Attorney General, State of New York
                    Attorney for Defendants
                    KATHLEEN M. KACZOR
                    Assistant Attorney General, of Counsel
                    350 Main Street
                    Suite 300A
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

July 22, 2013 for pretrial matters including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendants' motions to dismiss

(Docs. Nos. 12 and 17), respectively filed May 8 and 15, 2012, and Plaintiff's motion for

summary judgment (Doc. No. 23), filed June 18, 2012.

## BACKGROUND

Plaintiff Preston A. Smith ("Plaintiff"), an inmate proceeding *pro se*, commenced this civil rights action on October 18, 2010, while incarcerated at Attica Correctional Facility ("Attica") asserting on the Prisoner Civil Rights Complaint Form, as well as in the attached "Complaint" claims alleging five separate violations of Plaintiff's constitutional rights by Defendants, all employees of New York State Department of Corrections and Community Supervision ("DOCCS"), including Attica Superintendent James Conway ("Conway"), Attica Deputy Superintendent of Security Paul Chappius, Jr. ("Chappius"),[1] Attica Deputy Superintendent of Programs S. Dolce ("Dolce"), and Attica Senior Counselor James Whiteford[2] ("Whiteford").  Plaintiff specifically alleged (1) Defendants, in violation of the First Amendment, forced Plaintiff to participate in strenuous work which Plaintiff, because of a bulging disc in his back, was unable to perform, to retaliate against Plaintiff for filing prison inmate grievances; (2) Defendants, in violation of the Eighth Amendment, ordered Plaintiff to perform strenuous work; (3) Defendants denied Plaintiff the opportunity to participate in DOCCS programs, thereby rendering Plaintiff ineligible for parole consideration, in violation of due process, as well as to retaliate against Plaintiff for filing prison inmate grievances, in violation of the First Amendment; (4) Defendants, in violation of the Eighth Amendment, acted with deliberate indifference to Plaintiff's serious medical needs by ordering Plaintiff to perform strenuous work despite Plaintiff's bulging disc, for which Defendants also denied Plaintiff treatment and declining Plaintiff's requests to transfer to another correctional facility to receive treatment, and (5) Defendants retaliated against Plaintiff for filing prison inmate

---

[1] Defendant Chappius's name is misspelled in the Complaint as "Chiappius."
[2] Defendant Whiteford's name is incorrectly spelled "Whitford" in the Complaint.

grievances in violation of the First Amendment by denying Plaintiff the opportunity to participate in prison programs that would have enabled Plaintiff to be considered for release on parole.

In an order filed February 3, 2011 (Doc. No. 8) ("February 3, 2011 Order"""), District Judge Michael A. Telesca dismissed, in their entirety and with prejudice, all claims asserted against Defendants Conway and Chappius for lack of personal involvement, February 3, 2011 Order at 25, and Plaintiff's claims asserted against Defendants Dolce and Whiteford for First Amendment retaliation for filing prison inmate grievances and Eighth Amendment cruel and unusual punishment, based on Plaintiff's assignment to strenuous work despite physical limitations interfering with Plaintiff's ability to perform such work, and First Amendment retaliation and Fourteenth Amendment due process claims, based on the denial of access to DOCCS programs at Attica necessary for consideration of release on parole. *Id.* at 18-20. Judge Telesca further dismissed without prejudice and with leave to refile those claims asserted against Defendants Dolce and Whiteford alleging Defendants, by assigning Plaintiff to work beyond Plaintiff's physical capacity, exhibited deliberate indifference to Plaintiff's physical limitations in violation of the Eighth Amendment proscription against cruel and unusual punishment, *id.* at 18, and Defendants, by denying Plaintiff the opportunity to participate in certain prison inmate programs that could be considered in assessing Plaintiff's eligibility for release on parole, retaliated against Plaintiff for filing prison inmate grievances, in violation of the First Amendment. *Id.* at 22.

On February 24, 2011, Plaintiff filed an Amended Complaint (Doc. No. 9) ("Amended Complaint"), consisting of the Prisoner Civil Rights Complaint Form and the

attached "Amended Complaint" (Doc. No. 9-1) containing 42 pages of additional factual allegations and attaching 55 pages of exhibits ("Plaintiff's Exh(s). __").  Although difficult to discern, Plaintiff's Amended Complaint essentially alleges five claims for relief, including denial of due process in violation of the Fourteenth Amendment ("First Claim"), denial of equal protection under the Fourteenth Amendment ("Second Claim"), interference with access to courts in violation of the First Amendment ("Third Claim"), failure to protect in violation of the Eighth Amendment ("Fourth Claim"), and denial of medical treatment in violation of the Eighth Amendment ("Fifth Claim").  Plaintiff's claims are asserted against Dolce and Whiteford, in addition to Attica Nurse Killinger ("Killinger"), and Attica Deputy Superintendent of Programs Kenneth Perlman ("Perlman").

On May 8, 2012, Defendants filed a motion to dismiss the Amended Complaint for failure to state a claim (Doc. No. 12) ("Defendants' Motion"), the Declaration of Assistant Attorney General Kathleen Kaczor ("Kaczor Declaration"), attaching exhibit A, and Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Doc. No. 15) ("Defendants' Memorandum").  On May 15, 2012, Defendants refiled their motion to dismiss (Doc. No. 17) ("Defendants' Refiled Motion"), along with the same supporting documentation including the Kaczor Declaration (Doc. No. 19), and Defendants' Memorandum (Doc. No. 18).[3]

On June 18, 2012, Plaintiff filed a motion for summary judgment (Doc. No. 23) ("Plaintiff's Motion"), supported by attached exhibits A through R ("Plaintiff's Exh(s). __").  On July 13, 2012, Defendants filed Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss (Doc. No. 25) ("Defendants' Reply").

---

[3] Defendants do not explain why they refiled their motion to dismiss on May 15, 2012.

On July 17, 2012, Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Doc. No. 27) ("Defendants' Response").

On November 20, 2012, Plaintiff filed a supplemental exhibit in support of his claims (Doc. No. 29) ("Supplemental Exhibit"). On March 18, 2013, a copy of Plaintiff's Appeal Form to Commissioner, Superintendent's Hearing (Doc. No. 30) ("Disciplinary Hearing Appeal Form"), was filed by Plaintiff. Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion (Doc. No. 12) should be *sua sponte* converted to summary judgment and should be GRANTED; Defendants' Refiled Motion (Doc. No. 17) is DISMISSED as moot; and Plaintiff's Motion (Doc. No. 23), should be DENIED. The Clerk of the Court should be directed to close the file.

### **FACTS**[4]

In his Amended Complaint filed February 24, 2011, Plaintiff Preston A. Smith ("Plaintiff" or "Smith"), an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), makes factual allegations against numerous DOCCS employees at Attica, only four of whom are sued as Defendants, including Deputy Superintendent of Programs S. Dolce ("Dolce"), Senior Counselor James Whiteford, Nurse Killinger ("Killinger"), and Deputy Superintendent of Programs Kenneth Perlman ("Perlman"). The essence of Plaintiff's claims is that although he suffers from severe degenerative disease in his spine, including spinal stenosis, a bulging disc, and carpal tunnel syndrome, Defendants have repeatedly refused to provide Plaintiff with proper treatment for his medical condition, but have repeatedly assigned Plaintiff to institutional programs requiring heavy work which Plaintiff, based

---

[4] Taken from the pleadings and motion papers filed in this action.

on his physical disability, is unable to perform, such that Plaintiff continually fails to meet the criteria for release on parole, which criteria includes participation in institutional programs.

The Amended Complaint consists of four parts, including the Prisoner Civil Rights Claim Form ("Form Amended Complaint"), attached to which is a 21-page document entitled "Amended Complaint" asserting three claims for relief ("Amended Complaint),[5] followed by 58 pages of exhibits ("Amended Complaint Exh.") and a certification of service. The rambling Amended Complaint is prolix, containing a total of five claims for relief, including the same claims Judge Telesca dismissed with prejudice in the February 3, 2011 Order, and others which are seemingly irrelevant to Plaintiff's claims against the named Defendants. Although verbose, the Amended Complaint is sparse as to such salient details as to specifically who is alleged to have engaged in the claimed civil rights violations, and where and when such conduct occurred. Nevertheless, the court discusses the claims as best gleaned from the Amended Complaint.

**Claim One, Form Amended Complaint, First Claim**

Participation in institutional programs is necessary to meet the parole board's criteria for consideration of release on parole. On December 22, 2008, January 27, 2009, August 24, 2009, November 6, 2009, and April 15, 2010, April 24, 2010, however, Defendant Attica Deputy Superintendent Kenneth S. Perlman ("Perlman"), instructed "facility coordinators," including Defendants Attica Senior Counselor and Program

---

[5] A second 21-page document also entitled "Amended Complaint" asserting the same three additional claims, is also included in the Amended Complaint. Although the claims are identical to those asserted in the Amended Complaint, the second 21-page document is not a photo-copy but, rather, a hand-written copy of the first 21-page Amended Complaint.

Committee Chair James Whiteford ("Whiteford"), and Attica Deputy Superintendent of Programs S. Dolce ("Dolce"), to "force" upon Plaintiff a job program assignment despite Plaintiff's medical infirmities, including spinal stenosis, a bulging disc in the vertebrae of his spinal canal, and carpal tunnel syndrome in both arms.

**Claim Two, Form Amended Complaint, Second Claim**

On December 31, 2008, July 15, 2009, June 21, 2010, August 4, 2010, "6-15[th] 2010," and August 22, 2010, Defendants Dolce and Attica Nurse Administrator R. Killinger, R.N. ("Nurse Killinger"), sent memoranda to Plaintiff advising that, although Plaintiff would not receive treatment for his medical condition, Plaintiff could not participate in institutional programs, but must either be placed on idle assignment, or in a program that was likely to exacerbate and conflict with his medical care. According to Plaintiff, such actions prevented Plaintiff from receiving program instruction necessary for Plaintiff to be considered for release on parole.

**Claim Three, Amended Complaint, Count One**

Defendant Perlman, in assigning Plaintiff to work as a "porter" on A-Block, relied on an unqualified correctional facility medical staff member's recommendation regarding Plaintiff's physical ability to perform such job entailing heavy duty tasks, including shoveling snow, carrying heavy items, mopping, sweeping, and unloading supplies from tractor trailers, likely to harm Plaintiff. Plaintiff maintains that when he complained about the assignment, he faced retaliation with threats of denial of proper medical care, and the continued denial of Plaintiff's requests to participate in therapeutic programs that would have allowed Plaintiff to be considered for release on parole.

**Claim Four, Amended Complaint, Count Two**

Defendant Dolce and Whiteford continued to deprive Plaintiff and interfered with Plaintiff's medical care by discontinuing Plaintiff's pain therapy treatment, including pain medications, and physical therapy for Plaintiff's herniated bulging disc and carpal tunnel syndrome, and delayed in placing Plaintiff in a medical disability company.  According to Plaintiff, when he was finally placed in a medical disability company, he was harassed by repeatedly being moved from cell to cell, and "was ultimately assaulted by security staff for filing complaints and grievances, while placed on Administrative Unassignment 'Idle' status" although Plaintiff continued to volunteer to participate in programs that would have rendered Plaintiff eligible for parole consideration.  Plaintiff maintains Defendants denied Plaintiff's requests to participate in prison programs to retaliate against Plaintiff for filing grievances.  On April 26, 2010, Plaintiff was issued an allegedly false misbehavior report as further retaliation.

**Claim Five, Amended Complaint, Count Three**

"[I]mmediately" after Plaintiff filed an unspecified grievance, unspecified Defendants harassed Plaintiff by denying Plaintiff "custodial and therapeutic programs for his continued rehabilitation and expectations to seek release [on parole]."  Such retaliation included placing Plaintiff on "idle unassigned" status, rather than assigning Plaintiff to a non-physically demanding program which would have allowed Plaintiff to be employed and attend programs so as to meet the parole board's requirements for parole release.  Plaintiff maintains unspecified Defendants also interfered with his medical care and custodial, therapeutic programs to retaliate against Plaintiff for filing grievances.

Exhibits submitted by Plaintiff establish, as Plaintiff claims, that Plaintiff has made numerous requests for program placements that will allow him to earn good time credit for parole consideration, has requested to participate in various substance abuse programs, has a poor prison disciplinary record, and also suffers from physical infirmities including back problems and carpal tunnel syndrome.  For example, exhibits attached to the Amended Complaint refer to Plaintiff's attempts to be accepted into DOCCS Alcohol and Substance Abuse Treatment ("ASAT") Program, and selection for participation in an Alcoholics Anonymous group.  *See*, *e.g.*, Amended Complaint Exh. 16 (Doc. No. 9-1 at 71-72) (August 24, 2009 memo by ASAT Correction Counselor ("CC") Brenda Post ("Post") ("First Post Memo"), advising Plaintiff his name had been added to the AA meeting list, and April 14, 2010 memo by Post advising Plaintiff Post had asked Whiteford , who "is the person who assigns men to the ASAT groups," to consider assigning Plaintiff to an ASAT group, and that Whiteford had replied he would "look into it," yet further advising that because the waiting list for ASAT assignment was so lengthy, Post had no idea when Plaintiff's "name will be reached.").

Perlman, in a November 6, 2009 Letter, Amended Complaint Exh. 4 (Doc. No. 9-1 at 51) ("November 6, 2009 Letter"), advised Plaintiff his participation in the ASAT program has been "impeded" by Plaintiff's "history of poor custodial adjustment to include numerous Special Housing Unit (SHU) confinements totaling to nearly 5,000 days of SHU placement."  Perlman explains that inmates in SHU are removed from the substance abuse treatment Required Program List ("RPL") because their SHU confinement prevents their participation in programs.  *Id.*  Perlman further states, "[i]t is unfortunate that your self-destructive, and oftentimes violent behavior has impeded your

placement in required programs." *Id.* Perlman's review of Plaintiff's record, however, showed Plaintiff was then in the substance abuse treatment RPL at Attica such that, in accordance with DOCCS policy of giving priority for placement in a substance abuse treatment program to inmates based on their earliest release dates ("ERD"), Plaintiff would, in time, be admitted into the ASAT. *Id.* Because the Time Allowance Committee ("TAC"), is obligated to ensure inmates complete recommended programs, Plaintiff's poor disciplinary history and failure to complete recommended programs required TAC withhold Plaintiff's good time credit. *Id.* Nevertheless, Plaintiff was advised that, should he satisfy his TAC requirements, he should contact his assigned correction counselor to request reconsideration of restoration of good time, and was "strongly encouraged" to improve his "custodial adjustment and to positively participate in all recommended programs." *Id.*

On June 16, 2009, Plaintiff underwent an MRI at Wyoming County Community Health System, that showed various bulging discs, effacement (disappearance) of the anterior CSF (cerebral spinal fluid), spinal stenosis, disc herniation, and foraminal narrowing, of Plaintiff's cervical spine. Amended Complaint Exh. 5 (Doc. No. 9-1 at 53). In a November 3, 2010 memorandum from Nurse Killinger to one DSA M. Woeller, Amended Complaint Exh. 24 (Doc. No. 9-1 at 88), Killinger advises that Plaintiff "has had an EMG nerve conduction study done. He is on Neurontin for pain which is an appropriate analgesic for nerve pain. He has had PT and has a tens unit. He has wrist splints as well for his carpal tunnel syndrome. . . ." *Id.* In a letter dated November 24, 2010, DOCCS Regional Health Services Administrator Eileen DiNisio advised Plaintiff that Plaintiff's Neurontin was discontinued because Plaintiff was "hoarding it" and his

Ultram (narcotic-like pain reliever used to treat moderate to severe pain), was discontinued because Plaintiff's "liver enzymes were elevated." Amended Complaint Exh. 25 (Doc. 9-1 at 89). Plaintiff was further advised that he had been prescribed Motrin for pain with no signs of distress observed by the health care staff, that Plaintiff did not have "a permit for hand guards," and there was no spinal cord injury noted in Plaintiff's medical record, only that Plaintiff has spinal stenosis. *Id.*

## DISCUSSION

**1.      Dismissal for Failing to State a Claim and Summary Judgment**

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. Where, however, matters outside the pleadings are submitted in support of or in opposition to a motion to dismiss, the court may *sua sponte* convert the motion to dismiss to a motion for summary judgment, provided all parties were aware of the possibility of such conversion.

Here, Defendants have not filed an answer, but instead moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted. Although discovery has not taken place, Plaintiff moves for summary judgment on his claims based on Defendants' failure to file an answer, and submits matters outside the pleadings in support of such motion. Plaintiff's Motion ¶ 3. Defendants' Motion is limited to the two claims for which Judge Telesca specifically granted Plaintiff leave to amend, including (1) Plaintiff's Eighth Amendment claim that Defendants were "medically indifferent" to Plaintiffs' medical condition, requiring Plaintiff perform physical tasks that were beyond Plaintiff's capability, Defendants' Memorandum at 8-9 (citing Amended Complaint, Facts ¶ 13, (Doc. 9-1 at 13)); and (2) Plaintiff's First Amendment retaliation claim that Defendants subjected Plaintiff to discipline to retaliate against Plaintiff for engaging in constitutionally protected activity, specifically, the filing

of prison inmate grievances complaining about the denial of access to DOCCS

programs necessary for parole consideration, Defendants' Memorandum at 9-14.

Plaintiff, however, does not limit his motion for summary judgment to the same two

claims but, rather, seeks summary judgment on the entire Amended Complaint,

including the same two Defendants seek to dismiss for failure to state a claim.

Moreover, Plaintiff has submitted matters outside the pleadings in support of his motion

for summary judgment.  Because Plaintiff seeks summary judgment on the same claims

Defendants seek to dismiss for failure to state a claim, and relies on evidence outside

the Complaint, the court *sua sponte* converts Defendants' Motion to summary

judgment.[6]

Significantly, that Plaintiff filed in opposition to Defendants' Motion a motion for

summary judgment establishes Plaintiff was on notice that summary judgment could be

granted on his claims, thereby negating any need to specifically advise Plaintiff of the

conversion of Defendants' Motion to dismiss to one for summary judgment.  *See Jova v.

Smith*, 582 F.3d 410, (2d Cir. 2009) (holding district court's failure to give *pro se*

incarcerated litigants notice of not adequately responding to defendants' summary

judgment motion was harmless where litigants filed cross-motion for summary

---

[6] Although Defendants argue in opposition to summary judgment that Plaintiff's Motion should be denied because Plaintiff failed to file the Statement of Undisputed Issues of Fact as required by Local Rule 56.1, now Local Rule 56(a)(1) of the Local Rules of Civil Procedure – WDNY ("Local Rule 56(a)(1)"), Defendants' Response at 8, the case Defendants reference in support of such argument, *Lolonga-Gedeon v. Child & Family Services*, 2009 WL 3698389, at * 4 (W.D.N.Y. Nov. 2, 2009), does not require denying Plaintiff's Motion on that basis.  Rather, in *Lolonga-Gedeon*,  the issue of the movant's failure to submit a statement of undisputed facts was addressed as a second alternative ground for denying the movant's motion for summary judgment because the failure to file such statement, given the circumstances of that action, deprived the court of its ability to determine whether any material issues of fact existed, in contrast to the instant case where the court is able to discern, based on the pleadings, motion papers, and exhibits filed in connection with the pleadings and motions, that no issue of material fact exists.  Moreover, the wording of Local Rule 56(a)(1) is equivocal on this point.  *See* Local Rule 56(a)(1) ("Failure to submit such statement *may* constitute grounds for denial of the motion." (italics added)).  Thus, the failure to file the statement does not necessarily require dismissal.

judgment, including exhibits in opposition to defendants' motion); *M.B. # 11072-054 v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997) (finding *pro se* inmate plaintiff who filed declaration of facts, exhibits and memorandum of law and a cross-motion for summary judgment understood the nature and consequences of summary judgment).

Furthermore, motions for summary judgment can be granted in favor of the non-moving party. *See Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (*sua sponte* grant of summary judgment in favor of non-moving party does not require notice and opportunity to respond where court's determination is based on issues identical to those raised by movant, and there is no indication movant might otherwise produce evidence affecting court's determination). "Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996). Although generally in considering whether to grant summary judgment, the court must resolve all ambiguities and construe all inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and deposition in favor of the nonmovant, "[i]n considering whether to grant summary judgment against the moving party *sua sponte*, the court is required to view the evidence in the *moving party's* favor." *NetJets Aviation, Inc. v. LHC Communications*, LLC, 537 F.3d 168, 179 (2d Cir. 2008). The court thus converts Defendants' Motion to a motion for summary judgment.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson,* 477 U.S. at 255); *Rattner*, 930 F.2d at 209. The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). "Where the plaintiff moves for summary judgment, he bears a greater initial burden to show that the evidence supporting his claims is so compelling that no reasonable jury could return a verdict in favor of the defendant." *Guillory v. Ellis*, 2012 WL 2755296, at * 5, n. 16 (N.D.N.Y. Mar. 22, 2012)

(citing *S.E.C. v. Meltzer*, 440 F.Supp.2d 179, 187 (E.D.N.Y. 2006)).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'"  *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ."  *Id*.  The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)).  Here, Plaintiff's claims for relief allege deprivation of constitutional rights under 42 U.S.C. § 1983, including the First Amendment protection against retaliation for filing prison inmate grievances, the Eighth Amendment prohibition against cruel and unusual punishment, and Fourteenth Amendment due process.

It is undisputed that Defendants, as DOCCS employees, acted under color of state law in connection with the events on which Plaintiff's claims are based. Thus, for the purposes of alleging civil rights claims, the remaining relevant inquiry is whether Defendants' conduct, as alleged by Plaintiff, deprived Plaintiff of any federal constitutional right actionable pursuant to § 1983 including, as Plaintiff alleges, his First Amendment right to petition for redress of grievances, his Eighth Amendment right to be free from cruel and unusual punishment and provided with medical care, and his Fourteenth Amendment right to due process. Because of the nature of Plaintiff's Amended Complaint, the court considers whether any issue of fact precludes granting summary judgment in favor of Plaintiff or Defendants on any of Plaintiff's claimed violations of the First, Eighth, and Fourteenth Amendments.

## 2.     Personal Involvement

Preliminarily, the court addresses whether, construing the facts in favor of Plaintiff, there is any basis supporting any Defendant's requisite personal involvement in the alleged constitutional deprivations. It is basis that a defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to liability in a § 1983 action. *Spavone v. New York State Dept. of Correctional Services*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Further, a supervisor's liability in a § 1983 action "cannot rest on respondeat superior." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citing cases). "To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violation." *Id.* (citing *Green v. Bauvi*,

46 F.3d 189, 194 (2d Cir. 1995)). More than "mere 'linkage in the prison chain of

command'" is required to implicate a prison official in an alleged constitutional violation.

*Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). The requisite

personal involvement

> "can be shown in one of more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003)).

In the instant case, as discussed below, Plaintiff has failed to demonstrate or

adequately allege the personal involvement of any Defendant in the claimed

constitutional deprivations.

### A.  Perlman

In particular, Plaintiff alleges Perlman, as DOCCS Deputy Commissioner of

Program Services, forced Plaintiff into the porter assignment, despite Plaintiff's

degenerative back condition. Amended Complaint, Claims One and Three. Plaintiff,

however, does not allege, nor does the evidence demonstrate, that Perlman was

personally involved in assigning Plaintiff to the porter position; rather, Perlman's sole

involvement in the events about which Plaintiff complains is limited to two responses to

letters from Plaintiff complaining about the porter assignment, including a letter dated

January 27, 2009 ("January 27, 2009 Letter") (Amended Complaint Exh. 4 (Doc. No. 9-1

at 50), repeated at Summary Judgment Exh. H (Doc. No. 23 at 20)), and a second letter

dated November 6, 2009 ("November 6, 2009 Letter") (Amended Complaint Exh. 4

(Doc. No. 9-1 at 51), repeated at Summary Judgment Exh. I (Doc. No. 23 at 21)). In the January 27, 2009 Letter, Perlman states he is responding to Plaintiff's letter to Commissioner Fischer regarding Plaintiff's program assignment, that "[a] review of this matter indicates staff in medical services have confirmed a work assignment is more beneficial for you, as compared to being unassigned," and that Plaintiff was "encouraged to improve your custodial adjustment and participate fully in all recommended programs that will enhance your transition back into the community." January 27, 2009 Letter. Perlman's November 6, 2009 Letter responds to Plaintiff's concerns regarding placement in the ASAT program and good time, with Perlman attributing Plaintiff's placement in the ASAT program had been "impeded" by Plaintiff's "history of poor custodial adjustment," including "nearly 5000 days of SHU placement" which necessitated removing Plaintiff from the list for the ASAT program. November 6, 2009 Letter. Perlman further advised Plaintiff that eligible inmates are prioritized based on their respective earliest release date ("ERD") for the ASAT program. *Id.* Because Plaintiff's ERD was August 2010, Plaintiff would be admitted into the ASAT program provided Plaintiff complied with all behavioral standards. *Id.* Plaintiff was informed that the Time Allowance Committee ("TAC"), which is charged with ensuring all inmates timely complete their recommended programs, was also required to withhold good time from inmates whose poor disciplinary records prevented them from completing their recommended programs. *Id.* Finally, Plaintiff was advised to contact his assigned counselor to request reconsideration of possible restoration of good time. *Id.*

Although mere receipt of a letter is insufficient to establish the requisite personal involvement for § 1983 liability, personal involvement may be found where a supervisory

official receives and acts on or undertakes an investigation of the inmate's complaint or grievance. *Rivera v. Fischer*, 655 F.Supp.2d 235, 238 (W.D.N.Y. 2009). Nevertheless, even the most liberal construction of evidence in favor of Plaintiff fails to establish any personal involvement by Perlman in the alleged constitutional deprivations. Rather, in his January 27, 2009 Letter, Perlman merely advised Plaintiff that participation in a program would be beneficial insofar as Plaintiff wished to expedite his release on parole. Significantly, by the time Perlman wrote the January 27, 2009 Letter, Plaintiff had already been unassigned from the porter job, *see* Amended Complaint Exh. 3 (Doc. No. 9-1 at 49 (Plaintiff's December 22, 2008 Letter to Roach complaining about porter assignment, bearing handwritten notation at top that Plaintiff "will be unassigned"), and nothing in the record indicates Plaintiff was re-assigned to the porter position. In his November 6, 2009 Letter, Perlman further explained that Plaintiff's poor discipline history, including that Plaintiff was incarcerated in SHU for more than half of his period of incarceration, had impeded Plaintiff's placement in certain programs, and resulted in the revocation of Plaintiff's good time, advising Plaintiff that compliance with prison disciplinary rules would allow Plaintiff's assignment to programs that could expedite his release on parole, and may also provide for the restoration of some of Plaintiff's revoked good time. Accordingly, nothing within either of these two letters, merely referencing facts in Plaintiff's record, supports finding Perlman was personally involved in any of the conduct that allegedly violated Plaintiff's constitutional rights and summary judgment should be GRANTED in favor of Defendants with regard to the claims against Perlman.

## B. Killinger

Plaintiff's claims against Nurse Killinger pertain to a letter Plaintiff wrote on November 4, 2010, Amended Complaint Exh. 26 (Doc. No. 9-1 at 90) ("November 4, 2010 Letter"), after the instant action was commenced, complaining to Nurse Killinger that (1) he had been denied the necessary medical permit for hand guards Plaintiff claimed he needed for carpal tunnel syndrome in both hands, (2) he was not placed on sick call to be examined by a physician regarding treatment for a spinal cord injury, including Neurontin (neuropathic pain medication), which Plaintiff maintained was aggravated during an assault by an unnamed corrections officer on October 21, 2010; (3) he was not provided with over-the-counter medication for temporary relief of spinal cord pain; and (4) a nurse who was assigned to treat Plaintiff had poor hygiene, including dirty fingernails.  November 4, 2010 Letter at 1-2.  The November 4, 2010 Letter is insufficient to establish Nurse Killinger's personal involvement in the alleged unlawful conduct because the November 4, 2010 Letter does not attribute any of the events of which Plaintiff complains to conduct by Nurse Killinger.  Nor can Nurse Killinger be held liable as a supervisor based on *respondeat superior*, and Killinger's receipt of Plaintiff's letter is not enough to establish personal involvement in the alleged constitutional deprivations.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding prison official who forwarded letter received from inmate to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right).  As such, summary judgment should be GRANTED in favor of Defendants with regard to the claims against Nurse Killinger.

## C. Dolce and Whiteford

Plaintiff claims Dolce, as Attica's Deputy Superintendent of Program, and Whiteford, as Senior Program Counselor at Attica, continued to insist Plaintiff participate in the institutional work assignment as a porter, despite being made fully aware by Roach's response to Plaintiff's complaint about the assignment and decision to place Plaintiff on "unassigned status." Plaintiff's Memorandum ¶ 4. In his Amended Complaint, Plaintiff alleges Defendants Dolce and Whiteford acted with deliberate indifference by interfering with Plaintiff's medical care, switching Plaintiff's medications, discontinuing Plaintiff's physical therapy, moving Plaintiff to a cell where he was assaulted by staff in retaliation for filing grievances, and placing Plaintiff on "idle" assignment status instead of giving Plaintiff an assignment for which Plaintiff retained the physical capacity to perform and which would have allowed Plaintiff to be considered for release on parole. Amended Complaint, Fourth Claim ¶ 25. Defendants argue Plaintiff fails to allege the requisite personal involvement to support such claims. Defendants' Memorandum at 18-20. Plaintiff argues in support of summary judgment on his claims against Dolce and Whiteford that such Defendants, despite knowledge of Plaintiff's medical condition, continued to insist Plaintiff perform the porter position, refused Plaintiff treatment for his medical condition, and continued to deny Plaintiff enrollment into the ASAT program which Plaintiff needed to complete to be considered for release on parole. Plaintiff's Memorandum at 4-6.

The only evidence in the record regarding Dolce are three memoranda from Dolce to Plaintiff, dated January 5, 2009, Summary Judgment Exh. L (Doc. No. 23 at 24) ("January 5, 2009 Memorandum"), June 21, 2010, Summary Judgment Exh. M

(Doc. No. 23 at 25) ("June 21, 2010 Memorandum"), and August 4, 2010, Amended

Complaint Exh. 14 (Doc. No. 9-1 at 70) ("August 4, 2010 Letter").  In the January 5,

2009 Memorandum, Dolce states that although he appreciates Plaintiff sharing his

medical concerns, Dolce is "not a medical doctor and cannot give [Plaintiff] advice."

January 5, 2009 Memorandum.  Dolce also recommended Plaintiff discuss or write the

Nurse Administrator if Plaintiff desired medical attention; otherwise, Plaintiff could write

to the Deputy Superintendent for Administration.  *Id*.  In the June 21, 2010

Memorandum, Dolce advised a review of Plaintiff's program history established Plaintiff

had been assigned to ART (an anti-violence program) and as an A-Block porter

position.  June 21, 2010 Memorandum.  Dolce stated he would forward Plaintiff's

request for a different program to the program committee, but cautioned that "most

therapeutic programs have lengthy waiting lists and Program Committee and

Administration have to use discretion when making necessary decisions on

appropriateness of a particular assignment for an inmate."  *Id*.  The  August 4, 2010

Memorandum responds to an August 2, 2010 letter from Plaintiff, filed as Amended

Complaint Exh. 13 (Doc. No. 9-1 at 68) ("August 2, 2010 Letter"), in which Plaintiff

complains to Dolce about being assigned to the porter position, despite a medical

condition rendering Plaintiff unable to perform strenuous work, and the repeated denial

of Plaintiff's requests to participate in the ASAT program.  In response, Dolce advises

"[i]t appears there is confusion on your program requirements, expectations, and

assignments.  Your counselor and you should be discussing this at your next review.  I

will forward your letter to Mr. Earsley."  August 4, 2010 Memorandum.

Liberally construing these memoranda from Dolce fails to demonstrate Dolce's personal involvement in any of the alleged unlawful conduct of which Plaintiff claims; rather, the content of such memoranda establishes only the Dolce was aware that Plaintiff wished to enroll in the ASAT program to be considered for release on parole, and that Plaintiff did not have the physical capacity to work as a porter. Nothing within such memoranda, however, establishes Dolce ever insisted Plaintiff perform any particular job, including the porter job assignment, or was indifferent to Plaintiff's alleged plight; rather, Dolce suggested Plaintiff contact the Nurse Administrator for assistance with his program request, January 5, 2009 Memorandum, informed that Dolce would forward his request for a different program to the program committee, cautioning Plaintiff that slots in the therapeutic programs were hard to obtain and reserved for those closest to their release dates, June 21, 2010 Memorandum, and advised that Plaintiff should discuss his programming concerns with his counselor at his next review. August 4, 2010 Memorandum. Noticeably absent from these memoranda are any statements regarding Dolce's involvement, let alone interfering with, Plaintiff's medical treatment. Absolutely none of these statements in any way supports any of Plaintiff's claims against Dolce.

The only evidence in the record pertaining to Whiteford, who is responsible for assigning inmates to the ASAT program at Attica, is even more sparse, consisting of a single letter dated April 15, 2010, Amended Complaint Exh. 20 (Doc. No. 9-1 at 79) ("April 15, 2010 Letter"), from Plaintiff to Whiteford complaining that Plaintiff has yet to be enrolled in the ASAT program. Plaintiff maintained he had been advised that he would either be enrolled in Attica's ASAT program or transferred to a facility where he

could be enrolled in such program, but had been waiting for more than 18 months for such enrollment or transfer.  Plaintiff further advised he had completed the ART anti-violence program and was presently enrolled in the AA/NA volunteer program and the Cephas (anti-violence) Attica program.  April 15, 2010 Letter.  Although the record contains no response from Whiteford, a supervisory official's failure to respond to an inmate's letter of complaint does not provide the necessary personal involvement to give rise to a constitutional violation.  *Thompson v. Pallito*, __ F.Supp.2d __; 2013 WL 2393109, at * 11 (D.Vt. 2013) (citing *Candelaria v. Higley*, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) ("merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.")).  As such, neither does Plaintiff's April 15, 2010 Letter to Whiteford establish Whiteford's personal involvement in any civil rights violation.

Summary judgment should thus be GRANTED in favor of Defendants on all of Plaintiff's claims.  Alternatively, because this matter is before the undersigned for a report and recommendation, the merits of each of Plaintiff's claims are separately addressed.

**3.    First  Amendment – Retaliation**

Included in Claims Three, Four and Five are various assertions that Defendants engaged in conduct to retaliate against Plaintiff for filing inmate grievances complaining about being assigned to the porter prison job that Plaintiff, based on his physical condition, was unable to perform, denying Plaintiff the opportunity to participate in DOCCS programs that were necessary for Plaintiff to earn good time for consideration

by the parole board in deciding whether to release Plaintiff on parole, and denying

Plaintiff medical treatment and therapy for his spinal impairments. Defendants argue

Plaintiff's claims are inconsistent insofar as Plaintiff alleges he was denied the ability to

participate in programs necessary to obtain favorable parole consideration, but also

asserts Perlman instructed Defendants Dolce and Whiteford to force Plaintiff to

participate in programs Plaintiff needed to meet parole board considerations.

Defendants' Memorandum at 10. Defendants also assert Plaintiff admits he participated

in, and completed programs after filing grievances. *Id.* at 11. As such, Defendants

maintain no evidence satisfies the factors considered by courts in determining whether

the requisite causal connection between Plaintiff's participation in protected activity and

the asserted retaliatory acts exists. *Id.* at 12-14. Plaintiff argues in support of summary

judgment that after he filed various grievances complaining about his work assignment

as a porter, and the continued denial of Plaintiff's requests to participate in the ASAT

program, unspecified corrections officers denied Plaintiff food, recreation, and other

privileges and, in April 2012, assaulted him, causing injury including fracturing a front

tooth. Plaintiff's Memorandum ¶¶ 10-19. In opposition, Defendants assert that Plaintiff

has failed to establish the requisite causal link between Plaintiff's complaints, which

would be protected activity, and Defendants' alleged retaliatory conduct. Defendants'

Response at 4-6.

For a plaintiff to succeed in a First Amendment retaliation claim, he must show

that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took

adverse action against the plaintiff; and 3) there was a causal connection between the

protected conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.

2003). Courts are properly skeptical of prisoner retaliation claims as "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes*, 239 F.3d at 493 (internal quotation marks and citations omitted).

The plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' [actions]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Upon satisfying this burden, the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, "even if they had not been improperly motivated." *Graham*, 89 F.3d at 80. "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999). In the instant case, as discussed below, undisputed evidence in the record establishes that

the challenged actions would have been taken regardless of Plaintiff's complaints such that there is no causal connection between such actions and Plaintiff's complaints.

That Plaintiff suffers from a degenerative condition of his spine preventing him from performing the regular duties of the porter job assignment is not disputed and is established by evidence in the record.[7] Nor do Defendants dispute that Plaintiff's filing of complaints and grievances constitutes protected activity under the First Amendment. Rather, Defendants maintain they were unaware of Plaintiff's disability when Plaintiff was assigned to the porter job, and that no evidence in the record establishes Plaintiff ever performed any of the porter job functions, or that Plaintiff was unassigned from the porter job and not assigned to the ASAT program to retaliate against Plaintiff for complaining about the assignment.

By letter dated December 22, 2008, Plaintiff complained to one "Roach," an Attica Institutional Program Committee Member, about his work assignment as an A-Block porter despite Plaintiff's medical disabilities including a degenerative condition, namely,  bulging, herniated discs in Plaintiff's third, fourth, and fifth vertebrae of his spinal cord, preventing Plaintiff from performing the job duties of a porter.  Summary Judgment Exh. A.  A handwritten notation at the top of the letter indicates Plaintiff would be "unassigned" from the porter position.  *Id.*

---

[7] The undisputed evidence establishing Plaintiff's degenerative back condition includes an Outpatient Visit Note from University Hospital, Upstate Medical Center in Syracuse, New York, Summary Judgment Exh. B, issued on February 16, 2005, in connection with a follow-up examination of neck pain and radicular type right arm pain, on which it is noted a July 2004 MRI of Plaintiff's cervical spine revealed disc herniations, a bulging disc, stenosis, and spinal cord compression within Plaintiff's cervical spine. An EMG from February 2005 revealed median nerve motor and sensory compromise across Plaintiff's wrists, consistent with carpal tunnel syndrome, *id.*, although a positive Tinel sign – pins and needles sensation – in bilateral upper extremities, indicative of neurological involvement, was inconsistent with bilaterally negative Phalen sign – failing to indicate carpal tunnel syndrome. *Id.* The examining physician recommended cervical spine surgery at the C5-C6 level, which Plaintiff declined, desiring instead to continue with physical therapy and pain management with medications, so it was recommended Plaintiff undergo another MRI for further evaluation and continue with physical therapy and pain medication. *Id.*

On January 20, 2009, Plaintiff filed an Inmate Grievance complaining that "C.O. Ulrich," who is not named as a Defendant to this action, attempted to force Plaintiff to shovel snow despite Plaintiff's medical condition, refused to consider a memo from the Deputy Superintendent of Programs confirming Plaintiff had been "unassigned" from the porter job, and then retaliated by refusing to allow Plaintiff to go to sick call.  Amended Complaint Exh. 1.  In responding to Plaintiff's grievance, the Inmate Grievance Resolution Committee ("IGRC") stated Attica's medical department did not have any record that Plaintiff had any medical restrictions and Plaintiff was "advised to access sick-call to receive a medical restriction for work."  *Id.*; Summary Judgment Exh. F. Nevertheless, not only is there no evidence in the record that Plaintiff remained assigned to the porter position, it is significant that there is no affidavit from Plaintiff averring that Plaintiff ever performed any work in connection with the porter assignment, or any other evidence demonstrating such work performance.  Moreover, although Plaintiff repeatedly asserts his requests to participate in the ASAT program were denied to retaliate against Plaintiff's filing of complaints, a number of exhibits submitted by Plaintiff establish numerous DOCCS officials actively engaged in attempting the have Plaintiff enrolled in the ASAT program, but that spaces in the program were limited, were assigned to those inmates whose earliest release dates were nearing, and that Plaintiff's poor disciplinary history had interfered with Plaintiff's participation in certain programs, although Plaintiff did participate in several programs, including the Cephas anti-violence program and AA/NA treatment.  *See*, *e.g.*, Amended Complaint Exh. 4 (Doc. No. 9-1 at 51) (Perlman's November 6, 2009 Letter advising Plaintiff's poor disciplinary history, including more than 5000 days in SHU, interfered with Plaintiff's

admittance into the ASAT program, but encouraged Plaintiff's compliance with DOCCS disciplinary rules would allow Plaintiff to remain active in his substance abuse treatment program); *id.*, Exh. 16 (Doc. No. 9-1 at 72) (April 14, 2010 Memorandum from ASAT counselor Brenda Post advising she spoke with Whiteford, who assigns inmates to the ASAT program, but cautioned that "there is a very long waiting list for ASAT. I do not know when your name will be reached."). Similarly, Plaintiff admitted that while incarcerated at Attica, he completed Attica's Cephas anti-violence program on July 30, 2010, and participated in the Volunteer Substance Abuse Program. Amended Complaint ¶20. As such, the denial of Plaintiff's request for admittance into the ASAT program would have occurred even if Plaintiff had not filed complaints and grievances.

Further, insofar as Plaintiff asserts, for the first time in his memorandum of law in support of summary judgment, that unnamed corrections officers and unspecified Defendants denied him food, recreation, and "other simple privileges," Plaintiff's Memorandum ¶ 10, Plaintiff fails to specify which Defendants allegedly engaged in such deprivations, or, with one exception, when such deprivations occurred, such that it is impossible to determine whether the alleged deprivation is temporally related to any complaint made by Plaintiff as is Plaintiff's burden. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."(citing cases)). The sole exception is an Inmate Grievance Complaint Plaintiff filed on January 31, 2009, Summary Judgment Exh. G, in which Plaintiff complains that he was denied "chow." Such grievance, however, fails to establish who denied Plaintiff "chow," such that it is not clear that any of the Defendants sued in this action was

responsible for denying Plaintiff a meal to retaliate against Plaintiff for complaining about the porter assignment.

Accordingly, construing the evidence in the record in favor of Plaintiff fails to establish, as a matter of law, that any Defendant retaliated against Plaintiff for filing any complaint or grievance, or the existence of an issue of fact precluding summary judgment in favor of Defendants on this issue.

### 4.    Eighth Amendment

Plaintiff alleges his assignment to the porter position, which Plaintiff was physically unable to perform, constituted cruel and unusual punishment because Plaintiff's inability to perform such job rendered Plaintiff unable to earn good time credit for release on parole. Plaintiff further maintains that after complaining he was unable to perform the porter job, he was denied medical treatment for his physical disability.

In support of dismissal, converted to summary judgment, Defendants characterize Plaintiff's Eighth Amendment claim as "wholly insufficient" because Plaintiff fails to specify that any of the named Defendants ordered Plaintiff to perform any physical tasks. Defendants' Memorandum at 8-9. Rather, although Plaintiff claims to have been assigned to a porter position, the job duties for which include shoveling snow, carrying heavy items, mopping, sweeping, unloading supplies from trucks, and any work details instructed by "officers" in the "A-Block Housing Unit," none of the Defendants are in cellblock A. *Id.* at 9. Nor is there any allegation that any Defendant was aware of Plaintiff's physical infirmities. *Id.* Plaintiff argues in support of summary judgment that Defendants were aware that Plaintiff's medical condition, including his

degenerative back condition, prevented Plaintiff from performing the porter job, yet assigned Plaintiff to the porter position anyway and, when Plaintiff complained about the assignment, denied Plaintiff medical care for his condition and also refused to transfer Plaintiff to a medically approved housing unit designed to accommodate physically limited prisoners where his infirmity could properly be treated.  Plaintiff's Memorandum ¶¶ 5-10 and Summary Judgment Exhs. A, B, F, G, H, L, and M.  In opposition to Plaintiff's Motion, Defendants argue that Plaintiff's Amended Complaint fails to cure the deficiencies noted by Judge Telesca with regard to the original Complaint, specifically, that any of the Defendants knew of Plaintiff's physical disabilities, yet ordered Plaintiff to perform any of the porter job duties.  Defendants' Response at 10-12.

The Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment.  U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993).  Not every governmental action affecting the interests or well-being of a prisoner, however, is subject to Eighth Amendment protections.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Rather, only the unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment forbidden by the Eighth Amendment.  *Id.*  Nevertheless, deliberate indifference to an inmate's serious medical needs is within the ambit of the Eighth Amendment protection. *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical

needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)).  In addition to death, a serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at 702.  The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference.  *Estelle*, 429 U.S. at 104; *see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist, precluding summary judgment in defendant's favor).  Such delay in treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104-05.  Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial

risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)). Nevertheless, neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). A "mere disagreement" with a physician over the appropriate course of treatment does not arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. Regardless, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id*.

As to the objective prong, a sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration or extreme pain." *Hathaway*, 99 F.3d at 66. In the instant case, sufficient evidence in the record establishes, as discussed, Discussion, *supra*, at 10-11, 28 n. 7, that Plaintiff suffered from a degenerative back condition and carpal tunnel syndrome. Although nothing in the record indicates such conditions were of such medical urgency as to possible produce death, it is not disputed that the disabilities were degenerative and capable of producing extreme pain. As such, construing the evidence in Plaintiff's favor, Plaintiff's infirmities constituted a sufficiently serious condition as defined under the Eighth Amendment.

The record, however, fails to establish that Defendants either had knowledge of such conditions, yet assigned Plaintiff to the porter job, that Plaintiff ever performed any duties in connection with the porter assignment, or that any Defendant failed to adequately treat Plaintiff's medical condition as required to establish the subjective prong of an Eighth Amendment failure to treat claim. *Smith*, 316 F.3d 183-84 (2d Cir. 2003); *Chance*, 143 F.3d at 703.

Rather, the record demonstrates that although Plaintiff's degenerative disc disease and carpal tunnel syndrome had been diagnosed by 2005, Summary Judgment Exh. B, Plaintiff was assigned to the porter position in December 2008, Summary Judgment Exh. A, yet nothing in the record establishes that any named Defendant was aware of Plaintiff's medical condition when Plaintiff was assigned to the porter position, or that despite such awareness, assigned Plaintiff to the porter job which his medical condition rendered Plaintiff unable to perform, or took any steps to force Plaintiff to perform the porter job. Nor is there any evidence that Plaintiff ever actually performed the porter job. Rather, the evidence in the record establishes that Plaintiff complained of the porter job assignment to one "Roach" whom Plaintiff denominates as Chairman of Attica's Institutional Program Committee, and who is not named as a defendant to this action. Summary Judgment Exh. A. Further, upon complaining that he was unable to perform the job, Plaintiff was "unassigned" from the position. *Id.*

Nor is there any evidence in the record establishing that Defendants failed to provide Plaintiff with proper medical treatment for his disability. Specifically, Plaintiff claims Defendants Dolce and Whiteford interfered with Plaintiff's medical care by denying Plaintiff proper and adequate pain medication, physical therapy for his

degenerative back condition and carpal tunnel syndrome. Amended Complaint, Fourth

Claim ¶ 25; Fifth Claim ¶ 26. Plaintiff, however, fails to explain how Dolce and

Whiteford interfered with or denied Plaintiff such treatment. Nor does Plaintiff explain

how Dolce, as Deputy Superintendent of Programs, or Whiteford, as Senior Counselor

and Chairman of the Program Committee, would have had any involvement with or

responsibility for Plaintiff's medical care. As such, neither Dolce nor Whiteford, as a

matter of law, can be held liable for the medical care Plaintiff received for his medical

conditions. *See Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) ("One can

imagine the repercussions if non-medical prison officials were to attempt to dictate the

specific medical treatment to be given to particular prisoners – for whatever reason.").

As discussed, Discussion, *supra*, at 17-18, personal involvement is a prerequisite for

establishing liability in a § 1983 action.

Nor is there any factual basis on which to hold Killinger, as Attica's Nurse

Administrator, liable for Plaintiff's medical treatment; rather, the record establishes

that Nurse Killinger forwarded the November 4, 2010 Letter to Regional Health Services

Administrator Eileen DiNislo ("DiNislo"), who, in a letter dated November 24, 2010

Amended Complaint Exh. 25 (Doc. No. 9-1 at 89) ("November 24, 2010 Letter"),

informed Plaintiff that Nurse Killinger had advised Plaintiff had been prescribed Motrin

for pain as needed, and that no signs of distress had been observed by Attica's health

care staff. DiNislo continued that Neurontin was discontinued because Plaintiff was

hoarding it, and Ultram (narcotic pain reliever) was discontinued because Plaintiff's liver

enzymes were elevated. DiNislo further advised that Plaintiff did not have a permit for

hand guards and although Plaintiff's medical record indicated Plaintiff had spinal

stenosis, there not spinal cord injury was noted.  November 24, 2010 Letter.  Plaintiff

was encouraged to use the correctional facility's sick call procedures to obtain an

appointment with the medical staff at which Plaintiff could discuss his medical concerns.

*Id*.  Accordingly, nothing in the record sufficiently establishes Nurse Killinger's personal

involvement with Plaintiff's medical care to support a finding of Eighth Amendment

liability against her.

The record therefore fails to establish the subjective prong of Plaintiff's deliberate

indifference claim, or any factual issue which, if decided in Plaintiff's favor, could

establish the subjective prong of such claim. Summary judgment on Plaintiff's Eighth

Amendment claims of deliberate indifference to Plaintiff's medical condition should be

GRANTED in favor of Defendants and DENIED as to Plaintiff.


**6.      Fourteenth Amendment – Due Process and Protected Liberty Interest**

Insofar as Plaintiff alleges denial of a protected liberty interest, the only liberty

interest Plaintiff maintains he was denied is the opportunity to participate in those

programs that would permit Plaintiff to earn good time toward Plaintiff's release on

parole.  It is, however, well-settled that "[t]here is no constitutional or inherent right of a

convicted person to be conditionally released before the expiration of a valid sentence."

*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7

(1979).   Significantly, "for a state prisoner to have an interest in parole that is protected

by the Due Process Clause, he must have a legitimate expectancy of release that is

grounded in the state's statutory scheme."  *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir.

2001).  "Neither the mere possibility of release, nor a statistical possibility of release,

gives rise to a legitimate expectancy of release on parole." *Id*. at 171 (citing cases). Rather, "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Id*. Because no entitlement to release on parole is created by New York's parole provisions, there is "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Id*.

Accordingly, because Plaintiff has no protected liberty interest in release on parole, even if, as Plaintiff alleges, Defendants engaged in any conduct that wrongly denied Plaintiff's participation in any program that would have rendered Plaintiff eligible for release on parole, as a matter of law, no Fourteenth Amendment due process violation occurred. Summary judgment on Plaintiff's due process claim should be GRANTED in favor of Defendants, and DENIED as to Plaintiff.

### 7. Failure to File an Answer

Plaintiff argues in support of summary judgment that, to date, Defendants have failed to file any answer to the Amended Complaint. Plaintiff's Memorandum at 2. Defendants argue in opposition that they were not required to file an answer, having chosen instead to move to dismiss for failure to state a claim. Defendants' Response at 2.

Generally, an answer must be filed "within 21 days after being served with the summons and complaint," or, if service has been timely waived under Fed.R.Civ.P. 4(d), "within 60 days after the request for a waiver was sent, . . . ." Fed.R.Civ.P. 12(a)(1)(A)(i) and (ii). If, however, the defendant files a motion under Fed.R.Civ.P. 12, then "the responsive pleading must be served within 14 days after the notice of the

court's action [denying the motion]").  Here, because Defendants' Motion seeking dismissal of the action was filed under Rule 12(b)(6), Defendants' time in which to file an answer to the Amended Complaint will not commence running until and unless Defendants' Motion is denied.  Accordingly, there is no merit to Plaintiff's argument that summary judgment should be granted in Plaintiff's favor based on Defendants' failure to timely file an answer to the Amended Complaint.

## CONCLUSION

Based on the foregoing, Defendants' Motion (Doc. No. 12) should be *sua sponte* converted to summary judgment and GRANTED; Defendants' Refiled Motion (Doc. No. 17) is DISMISSED as moot; and Plaintiff's Motion (Doc. No. 23), should be DENIED; and the Clerk of the Court should be directed to close the file.

SO ORDERED, as to the dismissal of
Defendants' Refiled Motion.

*/s/ Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to Defendants' Motion
to dismiss, *sua sponte* converted to summary
judgment, and as to Plaintiff's Motion,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 7, 2013
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  August 7, 2013
        Buffalo, New York